UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE PAINTERS
UNION DEPOSIT FUND, a voluntary
unincorporated trust,

        Plaintiff(s),        CASE NUMBER: 05-70110
                                        HONORABLE VICTORIA A. ROBERTS

v.

INTERIOR/EXTERIOR SPECIALIST, CO.,
a Michigan corporation, THE LLAMAS GROUP,
CORP., a Michigan corporation and RITO JULIAN
LLAMAS, individually, jointly and severally,

        Defendant(s).

INTERIOR/EXTERIOR SPECIALIST, CO.,
a Michigan corporation, THE LLAMAS GROUP,
CORP., a Michigan corporation and RITO JULIAN
LLAMAS, individually, jointly and severally,

        Counter-Claimants and
        Third-Party Plaintiffs,

v.

TRUSTEES OF THE PAINTERS
UNION DEPOSIT FUND, a voluntary
unincorporated trust,

        Counter-Defendants,

and

PAINTERS DISTRICT COUNCIL NO. 22 OF
THE INTERNATIONAL BROTHERHOOD OF
PAINTERS AND ALLIED TRADES (AFL-CIO)

        Third-Party Defendant.
_____/

**ORDER REGARDING DEFENDANTS' OBJECTIONS
TO MAGISTRATE JUDGE'S ORDERS
GRANTING MOTIONS TO QUASH SUBPOENAS**

## I.     INTRODUCTION

This matter is before the Court on Defendants' Objections to Magistrate Judge's Orders Granting Motions to Quash Subpoenas.  The Court **REVERSES** the Magistrate's Order.

## II.    BACKGROUND

The relevant facts are taken from Plaintiffs' First Amended Complaint.  Plaintiffs are trustees and fiduciaries (hereinafter "the Trustees" or "the Plaintiffs") for the Painters Union Deposit Fund ("the Fund"), a voluntary, unincorporated trust.  *See* First Amended Complaint at ¶1.  Defendants Interior/Exterior Specialist, Co. ("IES") and The Llamas Group ("TLG") are employers, and Defendant Rito Julian Llamas ("Llamas") is an operating officer of IES.  *Id* at ¶¶ 2-3.

Under a collective bargaining agreement ("CBA") Defendants entered into with Painters District Council No. 22 of the International Brotherhood of Painters and Allied Trades (AFL-CIO)("the Union"), Defendants are obligated to report and make periodic payments to the Fund.  *Id* at ¶8.  The payments are then used to provide health, pension and other benefits to Defendants' employees through various employee benefit funds, which the Fund coordinates under the direction of the Trustees.  *Id* at ¶¶8, 10. The Trustees' responsibilities include collection of benefit payments from employers covered by the CBA and prosecution of delinquencies.  *Id* at 10.

The Trustees filed this action against Defendants under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. §§1132, 1145, to enforce Defendants' obligations to make fringe benefit payments to employees the Trustees represent under the terms of certain CBA and employee benefit plan documents. *Id* at ¶5. Defendants IES and TLG filed a Counterclaim against the Trustees and a Third-Party Complaint against the Trustees and the Union.[1] Among other things, Defendant IES alleges that the Union unlawfully discriminated against it in violation of 42 U.S.C. §1981. *See* Countercomplaint at ¶¶38-44. Because it is a minority-owned business, IES asserts that it was treated in a disparate manner compared to other contractors. At least one apparent focus of IES' claim is an audit to which it was subjected by Plaintiffs.

In the course of discovery, Defendants issued twelve duces tecum subpoenas to nonparty entities.[2] Defendants say that the subpoenas were issued to obtain information relevant to their disparate treatment claim. The Trustees filed a Motion to Quash the subpoenas on the grounds that: 1) the information sought was irrelevant to the Trustees' claims, 2) the information requested was burdensome, and 3) the information sought includes confidential information; specifically, the contractors financial information and the names and social security numbers of employees. Without asserting additional arguments, the Union and six of the subpoenaed companies[3] joined

---

[1] For ease of reference, the Court will continue to refer to the Trustees as "the Trustees" or "the Plaintiffs," and IES, TLG and Llamas as "the Defendants." The Union will be referred to as "the Third-Party Defendant" or "the Union."

[2] Centurion Painting, Inc., Atsalis Brothers Painting Co., Atsalis Brother Construction Co., Inc., Eugenio Painting Company, Eugenio Company, LLC, AME, Inc., Duross Maintenance, R. Duross Financial Corp., Duross Painting Co., Madias Brothers, Inc., Madias Brothers Painting Company, Inc., and First Evergreen, Inc.

[3] Duross Maintenance, R. Duross Financial Corp., Duross Painting Co., Madias Brothers, Inc., Madias Brothers Painting Company, Inc., and First Evergreen, Inc.

the motion.[4] This Court referred the motions to Magistrate Wallace Capel for hearing and determination, pursuant to 28 U.S.C. §636 (b)(1)(A). Following a hearing and supplemental briefing, the Magistrate granted the motion in its entirety, finding that the subpoenas are not relevant to the issues raised in Plaintiffs' complaint.

Defendants appeal the Magistrate's ruling on two primary grounds: 1) neither Plaintiffs nor the Union have standing to move to quash nonparty subpoenas; and 2) the information requested is relevant to Defendants' counter- and third-party claims, and Plaintiffs' claim that TLG is the alter ego of IES.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a), a magistrate's ruling on a nondispositive motion cannot be reversed unless it was clearly erroneous or contrary to law. *See also Brown v Wesley's Quaker Maid, Inc.,* 771 F.2d 952, 954 (6th Cir. 1985); *Haworth, Inc. v Herman Miller, Inc.,* 162 F.R.D. 289, 291 (W.D. Mich. 1995). "The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard. . . .Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth*, 162 F.R.D. at 291 (citations omitted).

### IV. APPLICABLE LAW AND ANALYSIS

---

[4] Note that there is some inconsistency in the record regarding how many and which contractors joined Plaintiffs' motion. The concurring motion of the three Duross companies was filed with the Clerk's office [Doc. 36], but it does not appear that the concurrence of the two Madias companies and First Evergreen were ever filed. However, the Magistrate makes specific reference in his Order to the Madias companies and First Evergreen, and Defendants indicate that six companies (which they do not list by name) joined Plaintiffs' motion. Therefore, the Court presumes that the Duross companies, the Madias companies and First Evergreen did indeed join Plaintiffs' motion.

### A. THE MAGISTRATE'S FINDING THAT PLAINTIFFS AND THE UNION HAVE STANDING TO MOVE TO QUASH THE NONPARTY SUBPOENAS IS NOT CONTRARY TO LAW

Although it appears that the Sixth Circuit has not yet addressed the issue, it is well settled that a party does not have standing to quash a subpoena directed at a nonparty absent a claim of "personal right or privilege" in the documents or information sought. *See* Minnesota *School Boards Association Insurance Trust v Employers Insurance Company of Wausau*, 183 F.R.D. 627, 629 (N.D. Illinois 1999); *Transcor Inc. v Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *Nova Products, Inc. v Kisma Video, Inc.,* 220 F.R.D. 238, 241 (S.D.N.Y. 2004). Here, the Magistrate did not address the Union's standing, but explicitly found that Plaintiffs have standing to object to the subpoenas in this case. However, the court did not indicate the basis for its finding.

In their original motion, Plaintiffs claim that their rights and privileges are at issue, because the subpoenaed contractors would be forced to disclose their (the contractors') financial information as well as employee names and social security numbers. Plaintiffs contend that forcing disclosure of this confidential information, which Plaintiffs have always been careful to keep discrete, will impair their relationship with the contractors because it will violate Plaintiffs' policy of discretion and it "may hinder Plaintiff's ability to secure cooperation and accurate information from contractors for years to come." Pls. Motion to Quash Subpoenas at p. 6.

There is no apparent factual or legal basis for Plaintiffs or the Union to claim a personal right or privilege with regard to the contractors' financial information. However, as fiduciaries for employees covered under the CBA, both Plaintiffs and the Union

arguably have an interest in maintaining the confidentiality of certain employee personal information, such as social security numbers.  See *I.B.E.W. Local Union No. 5 v Dept. of Housing and Urban Development*, 852 F.2d 87, 89 (3rd Cir. 1988)(recognizing that employees have a strong privacy interest in their social security numbers, absent a legitimate public interest in disclosure); *Sherman v U.S. Dept. of Army,* 244 F.3d 357, 365 (5th Cir. 2001)(same).  Therefore, the Court finds that the Magistrate's finding that Plaintiffs (and implicitly the Union) have standing was not clearly contrary to law.

### B. THE MOVANTS HAVE NOT ESTABLISHED SUFFICIENT GROUNDS TO QUASH THE SUBPOENAS

The circumstances under which a court may quash or modify a subpoena are listed in FRCP 45(c)(3):

> **(3)(A)** On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>
> **(i)** fails to allow reasonable time for compliance;
>
> **(ii)** requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
>
> **(iii)** requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> **(iv)** subjects a person to undue burden.
>
> **(B)** If a subpoena
>
> **(i)** requires disclosure of a trade secret or other confidential research, development, or commercial information, or
>
> **(ii)** requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
>
> **(iii)** requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to

> attend trial,
>
> the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

As stated, Plaintiffs, the Union and six of the subpoenaed companies (collectively "the Movants") assert three grounds to quash the subpoenas: 1) the information sought is irrelevant to Plaintiffs' claims, 2) the information requested is burdensome, and 3) the information sought includes the contractors' confidential financial information and the names and social security numbers of employees.

With regard to the first ground, the Movants argued that the information sought was not relevant as a defense to Plaintiffs' claims because: a) as a matter of law, Defendants are not entitled to assert their alleged disparate treatment as a defense to Plaintiffs' claim that Defendants failed to make fringe benefit payments in accordance with the CBA, and b) the audit at issue was authorized by the Plaintiffs, rather than the Union, in accordance with the CBA.  The Magistrate based his finding in Plaintiffs' favor on the latter argument.  The Magistrate essentially found that Defendants' attempt, through the subpoenas, to gather information about the Union's handling of audits for similarly situated non-minority or female companies was only relevant to their claim of discrimination if the Union was, in fact, responsible for ordering the audit against Defendants.  Based on what he apparently regarded as irrefutable evidence that it was Plaintiffs and not the Union that ordered the audit, the Magistrate ruled that the information sought was irrelevant.

It seems, however, that the Magistrate only considered relevance in the context

of available defenses to Plaintiffs' claims: "[T]he Court finds that the subpoenas are not relevant to the issues in the Plaintiff's complaint for recovery of fringe benefit payments from the Defendant." Magistrate Order, November 14, 2005 at p. 2.  Such a limited view fails to take into account the fact that Defendant IES asserted an independent counterclaim for disparate treatment.  A party is entitled to discovery of any non-privileged evidence that is relevant to its claims and defenses.  FRCP 26(b)(1). Therefore, even if the alleged discrimination will not mitigate IES' liability or damages on Plaintiffs' claims, IES is still entitled to discovery of information relevant to its own claims.

And, contrary to the Magistrate's finding, there is evidence which suggests that the Union was responsible for the audit initiated against IES.  Subsequent to the hearings before the Magistrate, the parties completed the deposition of Jeffrey D. Ruehle, the Fund's auditor.  Mr. Ruehle testified that the Trustees do not initiate an audit unless requested to do so by the Union.  *See* Def. Exh. 9 at pp. 22, 96.  This testimony suggests that the Union influenced the Trustees' decision to audit IES.  This is sufficient to establish the relevance of IES' inquiry into the Union's treatment of similarly situated non-minority and female companies such as the subpoenaed companies.

The Magistrate did not address the remaining grounds asserted by the Movants. However, the remaining arguments are also insufficient grounds to quash the subpoenas.  With regard to the Movants' assertion that the subpoenas are burdensome, the burden is on them to demonstrate that the subpoenas are "unreasonable or oppressive."  *Pollitt v Mobay Chemical Corp.*, 95 F.R.D. 101, 106 (S.D. Ohio 1982).

Here, the Movants did not even attempt to make this showing.  They simply assert that production is burdensome to third parties who are not responsible for Defendants' unpaid fringe benefits and liquidated damages.  *See* Pl. Reply Br. to Motion to Quash at p. 2.  They further contend that the oppressiveness of the subpoenas is apparent from the onerous and detailed demands made.  *Id.*  Each of these assertions is conclusory and they do not identify the alleged burden with adequate specificity.  Defendants make 12 document requests, most of which are very specific and limited to a brief time-frame.  *See* Defs. Exh. 8.  Therefore, there is no basis for the Court to make the blanket finding the Movants request.  Consequently, the Court finds that the Movants failed to meet their burden on this ground.

Plaintiffs' last assertion is that the subpoenas should be quashed because they require the disclosure of the contractors' sensitive financial information and the names and social security numbers of employees, all of which is ordinarily kept confidential.  A court may quash or modify a subpoena to protect against disclosure of confidential information.  FRCP 45(c)(3)(B)(i).  However, the burden is on the moving party to "show, with specificity, that disclosure will work a clearly defined and serious injury." *Composition Roofers Union Local 30 Welfare Trust Fund v Graveley Roofing Enterprises, Inc.,* 160 F.R.D. 70, 72 (E.D. Pa. 1995); *Cash Today of Texas, Inc. v Greenberg,* 2002 W.L. 31414138, *3 (D. Del. 2002).  The Movants have not made this showing with regard to either the contractors' financial information or the employees' personal information.  The only harm the Movants identify is the Trustees' claim that contractors may, hereafter, be reluctant to cooperate and provide accurate information to the Trustees, presumably due to their fear that they may later be compelled by a third

party to publicly disclose information given. This claim is speculative at best. Therefore, the Movants have failed to meet their burden on this ground as well.

Nevertheless, maintaining the confidentiality of the employees' social security numbers is a valid concern, *see I.B.E.W. Local Union No. 5*, 852 F.2d at 89; *Sherman*, 244 F.3d at 365, and it does not appear that disclosure of this information is pertinent to Defendants' claims. Therefore, the Court directs the parties to draft a proposed protective order pursuant to FRCP 26, allowing the parties, for example, to either redact social security numbers from the documents tendered or limit the persons allowed to view them.

## V. CONCLUSION

For all of the reasons stated, the Court **REVERSES** the Magistrate's Order Granting Plaintiffs' Motion to Quash Subpoenas. However, the parties are required to submit a stipulated proposed protective order protecting the confidentiality of employee social security numbers.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: January 11, 2006

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 11, 2006.

s/Linda Vertriest
Deputy Clerk