**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TRUSTEES OF THE PAINTERS UNION**
**DEPOSIT FUND,**

      **Plaintiff,**

**vs**                                          **Case No: 05-70110**
                                                    **Honorable Victoria A. Roberts**

**INTERIOR/EXTERIOR SPECIALISTS**
**COMPANY, ET AL,**

      **Defendants,**

_____/

**OPINION AND ORDER**

**I.**    **INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment As To Liability Against Defendants Interior/Exterior Specialist Co. ("IES") and Rito Julian Llamas (Doc. #84). For the following reasons, the Court **DENIES** Plaintiff's Motion.

**II.**    **BACKGROUND**

Please see the Court's Opinion and Order on Defendants' Motion for Partial Summary Judgment for background facts and standard of review. For purposes of this Motion the following facts are material:

    1.    Rito Llamas signed the collective bargaining agreement ("CBA").

    2.    Article XVII, section 2 of the CBA authorizes Plaintiff to inspect all books and records of IES to determine if IES conformed with the provisions of the CBA.

1

3.      Plaintiff conducted an audit of IES's records from September 1, 2001 to June 16, 2005.  The audit was revised on January 4, 2006.

4.      An audit of the books and records, according to Plaintiff, reflect that IES failed to pay fringe benefits in the amount of $315,643.17.

5.      Article XVIII, section 3 of the CBA provides for liquidated damages when contribution payments are untimely.

6.      Rito Llamas testified that some monies are owed to Plaintiff.  He stated, "oh, there was some monies owed, minimal amount, nowhere near what he was speaking of.  I can't even speculate, but it's a few thousand, 6,000, 7,000, somewhere in this ball park."  Pl. Ex. C.

Based on the above, Plaintiff requests the Court to find that IES and Rito Llamas, as personal guarantor, are liable for delinquent contributions.

## III.   APPLICABLE LAW AND ANALYSIS

### A.    Genuine Issues of Material Fact Exist as to Defendants' Liability

Plaintiff's Motion presents four main arguments: 1) that the audit demonstrates IES and Rito Llamas ("Defendants") are liable for fringe benefit contributions; 2) that Defendants are contractually liable and bound by ERISA to make fringe benefit contributions for each hour worked by all employees; 3) Rito Llamas is liable as a personal guarantor pursuant to the CBA; and 4) Defendants are liable for liquidated damages and attorneys fees pursuant to ERISA and the CBA.

In response, IES does not contest that it is contractually bound to make contributions.  Instead, IES argues that the issues raised by Plaintiff cannot be decided without determinations that: 1) IES effectively terminated the CBA; 2) IES and The

2

Llamas Group, Corp. ("TLG") are alter egos; and 3) the settlement agreement resolves all claims for alter ego acts prior and up to its execution.

    1.    <u>Genuine Issues of Fact Exist as to Defendants' Liability for Fringe Benefit Contributions for the Period September 1, 2001 through June 16, 2005.</u>

Plaintiff requests this Court to find that Defendants are liable for failing to submit pension benefit contributions. Plaintiff asserts that its audit and Rito Llamas's deposition testimony demonstrate liability. Plaintiff does not request this Court to find the amount of damages owed.

Defendants contend that summary judgment is inappropriate for several reasons. First, Defendants claim that the other issues regarding its possible alter ego status and the termination of the CBA must be decided prior to a finding of liability. Second, Defendants argue that the comprehensive audit includes payments made to employees after the CBA terminated on May 31, 2004. Third, Defendants note that the audit reports a substantial portion of the hours were worked by TLG and not IES employees. In the absence of a finding of alter ego status, these hours would be improperly included. Fourth, Defendants argue that the settlement agreement entered into with the Union precludes Plaintiff from collecting delinquent contributions prior to May 21, 2004. Finally, Defendants contend that they overpaid more than $56,000 in contributions, and therefore, are entitled to a refund.

In response, Plaintiff asserts that Defendants' counter arguments are the subject of separate pending motions. Plaintiff argues that the Court need not consider these other factors when determining Defendants' liability. The Court disagrees. Until the alter ego issue is decided, liability cannot be determined.

3

Plaintiff argues that Rito Llamas, in his deposition testimony, admits that money is owed, and the admission is dispositive of the issue of liability.  However, Jeffery Ruehle, assistant administrator for Plaintiff, also testified that if the CBA terminated on May 31, 2004, Defendants would only owe approximately $6,500.  Def. Ex. H.  Yet, Plaintiff asserts that per the audit Defendants owe $315,643.17.  Moreover, Plaintiff acknowledges that Mr. Ruehle's $6,500 calculation did not consider Defendants as alter egos.

Defendants' liability – based on the audit -- is intertwined with other issues presented in this litigation.  Viewing the evidence in a light most favorable to Defendants, the Court finds that genuine issues of material fact exist on Defendants' liability.

      2.    <u>IES and Rito Llamas are Contractually Liable and Bound by ERISA to Make Fringe Benefit Contributions.</u>

IES and Rito Llamas do not contest that as signatories to the CBA, they are responsible for making benefit contributions.  *See* Def. Ex. 13.  Accordingly, the Court will not address this issue.

      3.    <u>Rito Llamas's Liability as a Personal Guarantor.</u>

Plaintiff argues that Rito Llamas is personally liable for delinquent contributions. Plaintiff notes that Rito Llamas signed the personal guaranty included in Article XXIII of the CBA, and that he remains an officer and shareholder of IES.  Pl. Ex. A, C.

4

The Court agrees with Plaintiff.  Article XXIII provides:

> In consideration of the execution of this collective bargaining agreement by Painters District Council No. 22, the undersigned (and each of us) hereby agrees to guaranty and to be personally liable for the wages and all other payments required by the terms of this collective bargaining agreement, as long as any of the undersigned, maintains any ownership or management interest in the Interior/Exterior Specialists Co., signatory to this collective bargaining agreement.

Thus, Rito Llamas may be liable as a personal guarantor.

4.   <u>Plaintiff's Claim for Liquidated Damages and Attorneys Fees</u>

a.   *Liquidated Damages*

Plaintiff requests that the Court find Defendants liable for liquidated damages, if they are found liable for delinquent fringe benefit contributions.  Article XVII, section 3 of the CBA states in pertinent part:

> The Association, the Union and every Employer signatory to this Agreement agrees that the damages which will result from the failure of an Employer to pay his fringe benefit contributions on time, or in the correct amount, are difficult to calculate with any certainty and, therefore, any Employer who fails to make payments to the Funds, in accordance with this Agreement, shall pay as liquidated damages . . ..

The CBA sets forth a payment scheme for liquidated damages based on the number of days the employer has been delinquent.

In their response brief, Defendants merely state that awarding liquidated damages would be inappropriate because Llamas overpaid contributions.  The CBA governs.  *Central States, Southeast and Southwest Areas Pension Fund v. Alco Express Co.*, 522 F.Supp. 919, 922 (E.D.Mich. 1981).  If Defendants are liable for delinquent contributions, liquidated damages would be an appropriate award.

5

b.    *Attorney Fees and Costs*

In addition, Plaintiff seeks to "reserve the right to petition the Court for its order awarding attorneys fees and costs" pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), which provides:

> (2)    In an action under this subchapter by a fiduciary for or on behalf of a plan to enforce Section 1145 of this title in which a judgment in favor of the plan is awarded, the Court shall award the plan . . .

> (D)    reasonable attorneys fees and costs of this action, to be paid by the Defendant . . . .

This issue is premature, inasmuch as litigation continues.  *See Grier v. Goetz*, 421 F.Supp.2d 1061 (M.D.Tenn. 2006)(reserving a ruling on the issue of what constitutes "reasonable attorney fees" because the court had not received Plaintiff's affidavits detailing the amount of fees and expenses requested); *see also Airline Pilots Ass'n Int'l v. Northwest Airlines Inc.*, 627 F.2d 272, 278 (D.C. Cir. 1980)(vacating the district courts order denying attorneys fees as premature and inappropriate at the time litigation was still pending).  Therefore, the Court reserves ruling whether either party is entitled to attorney fees.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment as to Liability Against Defendants Interior/Exterior Specialist Co. And Rito Julian Llamas.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 27, 2007

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
March 27, 2007.

S/Linda Vertriest
Deputy Clerk