UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**TRUSTEES OF THE PAINTERS UNION
DEPOSIT FUND,**

    Plaintiff,

vs                                                   Case No: 05-70110
                                                     Honorable Victoria A. Roberts

**INTERIOR/EXTERIOR SPECIALISTS
COMPANY, ET AL,**

    Defendants,
_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Summary Judgment As To Defendants' Counterclaim (Doc. #85). For the following reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion.

**II.    BACKGROUND**

Please see the Court's Opinion and Order on Defendants' Motion for Partial Summary Judgment for background facts and standard of review.

Defendant Interior/Exterior Specialist Co. ("IES") and The Llamas Group, Corp. ("TLG") filed a five count counter claim against the Trustee and includes the Union as a third-party defendant. In three of those counts, Defendants claims that the Trustee and the Union: 1) defamed Defendants; 2) tortiously interfered with their contracts, business relationships, and/or expectancies; and 3) breached the express or implied settlement

1

agreement by not refunding or returning fringe-benefit payments to IES. The remaining two counts for discrimination and anti-trust violations are against the Union only. Defendants seek summary judgment on all claims.

## III. APPLICABLE LAW AND ANALYSIS

### A. DEFAMATION

Defendants' counterclaim alleges that Plaintiff published defamatory statements regarding IES's failure to pay fringe benefit contributions. Plaintiff admits sending a letter to Grange Construction, an employer of IES, stating that IES was delinquent in fringe benefit contributions for the months of August, September and October, 2004. The letter states in pertinent part: "As of this date this Contractor is delinquent in fringe benefit contributions for the months of August, September and October, 2004. We would appreciate your cooperation in contacting this office prior to any contract disbursement being made to IES so that we can be assured that all contributions have been made to these Trust Funds." Defendants argue that this statement was false and disparaging to IES and TLG.

Plaintiff asserts that the statement was not defamatory and was protected by qualified privilege. It points out that as a third-party beneficiary to the Collective Bargaining Agreement ("CBA") it is charged with the duty to collect payments from employers. Plaintiff argues it is strictly within this context that the Granger letter was sent. Further, Plaintiff asserts that the letter was written in good faith, without malice, and under the assumption that the statements were true.

The elements of a cause of action for defamation are: (1) a false and defamatory statement; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) actionability of the statement. *Smith v. Fergan*, 181 Mich. App. 594 (Mich. Ct. App. 1989). In addition, "a communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Nuyen v. Slater*, 372 Mich 654, 662 (1964). In assessing whether language is defamatory, the circumstances should be considered. *Sawabini v. Desenberg*, 143 Mich. App. 373, 380 (Mich. Ct. App. 1985)

Under the circumstances here, Plaintiff's letter could not reasonably be perceived as carrying a defamatory meaning. It clearly was designed to communicate a request for assistance in collecting fringe benefits to a limited audience.

Even if it could be perceived as defamatory, the statement was privileged. Under Michigan law, the qualified "shared interest" privilege applies "to all bona fide communications concerning any subject matter in which a party has an interest or a duty owed to a person sharing a corresponding interest or duty. The privilege embraces not only legal duties but also moral and social obligations." *Rosenboom v. Vanek*, 182 Mich.App. 113, 451 N.W.2d 520, 522 (Mich. Ct. App. 1990); *see also Smith v. Digital Equipment Corp.*, 149 F.3d 1184 (6th Cir. 1998).

The elements of qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. *Fergan*, 181 Mich. App. at 596-97 *citing Bufalino v. Maxon Bros., Inc.*, 368 Mich 140, 153 (1962). Plaintiff and

Granger Construction both had a legitimate business interest in the transaction at issue, including any alleged wrongdoing by Defendants. The statements were limited in scope and they were published to no one other than Granger Construction.

Since a qualified privilege applies to the statement in the letter, Plaintiff is privileged to make the statement so long as it did not make the statement with malice, that is with knowledge of falsity or in reckless disregard for the truth. *See Dougherty v. Capitol Cities Commc'n, Inc.*, 631 F. Supp. 1566 (E.D.Mich. 1986). "Reckless disregard is a subjective standard not to be measured by the conduct of a reasonably prudent person, but rather requires sufficient proof that the Defendant in fact entertained serious doubts as to the truth of his publication." *Id.*, at 1572, *quoting St. Amant v. Thompson,* 376 U.S. at 727, 731 (1968). The issue of actual malice is generally one of fact for the jury and for which supporting facts must be given; general allegations of malice are insufficient to establish a genuine issue of material fact. *Fergan*, 181 Mich. App. at 596-97.

Defendants contend that the qualified privilege is inapplicable, and therefore, they do not have to prove actual malice. They argue that the delinquent benefits contributions claimed in the letter were for periods after IES terminated its obligations under the CBA. Consequently, the statements were false because IES had no obligation to make fringe benefit contributions after May 31, 2004.

Plaintiff argues that Defendants cannot rest on mere allegations and that Defendants failed to present sufficient evidence demonstrating Plaintiff made the statements in reckless disregard of the truth. Plaintiff further contends that it believed the statements to be true at the time. In an affidavit, Plaintiff states: 1) it received

4

complaints from the Union that vacation pay was deducted from employees' paychecks but not paid to the fund from August to November, 2004; 2) the letter was written in good faith for the sole purpose of attempting to collect delinquent fringe benefits; and 3) the Granger letter was the sole contact made by Plaintiff with any contractor or entity doing business with IES.

Viewing the facts in a light most favorable to Defendants, it cannot be said that Plaintiff showed reckless disregard for the truth or falsity of its statement. The statement was merely an attempt to collect monies believed to be owed at the time. When the CBA terminated does not matter.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on this issue.

**B.     TORTIOUS INTERFERENCE**

Count III of Defendants' counterclaim alleges that IES and TLG had a contract, or business relationship and/or expectancy with Manchester High School, Barton Malow, Granger, and Woodhaven Township, as well as other project owners, construction managers, and contractors/subcontractors. Defendants claim that Plaintiff and the Union were aware of these business relationships and intentionally interfered by inducing a breach, and interruption of these contracts, or business relationship.

In response, Plaintiff argues that the Granger letter is the sole communication it had with a third party regarding IES. The letter was written in response to employee complaints. In an attempt to collect delinquent benefits, Plaintiff wrote Granger Construction. *See* Pl. Ex. I (affidavit of Michael Maher). Defendants do not contend that Plaintiff communicated with anyone other than Granger Construction.

5

Defendants failed to raise a genuine issue for trial because they have not produced Rule 56(c) evidence tending to prove with the required specificity, that Plaintiff tortiously interfered with Defendants' business relationship with Granger Construction. In Michigan, the elements for tortious interference with business relations are: 1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract or expectancy); 2) knowledge of the relationship or expectancy on the part of the interferer; 3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) damage to the party whose relationship or expectancy has been disrupted. *Feaheny v. Caldwell*, 175 Mich.App. 291, 437 (1989).

The first and second elements are met. Plaintiff was aware of IES's business relationship with Granger Construction. The third element - intentional interference- is satisfied only when Defendants produce sufficient evidence demonstrating Plaintiff's "illegal, unethical, or fraudulent conduct in addition to intentional interference." *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 354 (1984). In its response to Plaintiff's Motion, Defendants fail to present any evidence or articulate any arguments in support of its tortious interference claim.

In fact, Defendants only state, "In its Brief, the Fund [Plaintiff] acknowledges that it published disparaging statements concerning IES to third parties, thus admitting that it, too, tortiously interfered with and defamed IES and TLG." (internal citations omitted). Defendants have the burden to demonstrate specific affirmative acts to corroborate their claim. *Badiee v. Brighton Area Schs.*, 265 Mich. App. 343, 695 (2005). Moreover, as the nonmoving party, Defendants cannot rest on their pleadings, but must present significant probative evidence that Plaintiff unlawfully interfered with their business

relationships. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). Defendants failed to do so. Therefore, the Court **Grants** Plaintiff's Motion on this issue.

### C. Contract/Restitution

Count I of the counterclaim is an action for breach of contract and restitution. Defendants do not state whether this claim is pursuant to state common law or ERISA. Defendants essentially argue that Plaintiff breached its duty under the CBA by refusing to refund the June and July 2004 fringe benefit contributions.

Plaintiff's argument on this issue is woefully inadequate. For that reason alone, the Court should deny it. Essentially, Plaintiff argues that there is no issue of material fact because: (1) as a third-party beneficiary to the CBA, Plaintiff is not a contracting party to an express or implied agreement with Defendants; (2) Plaintiff is not a party to the settlement agreement between Defendants and the Union; and (3) it has not been decided that the CBA was not in effect at the time that the June and July 2004 fringe benefit contributions became due. Plaintiff cites no authority in support of these arguments.

In response, Defendants do not address the issue of breach of contract. Defendants do, however, argue that there is no issue of material fact on the restitution claim because the CBA terminated as of May 31, 2004, and IES had no obligation to make the June and July 2004 contributions. Thus, Defendants argue they are entitled to restitution. Defendants cite one case, *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, in support of this proposition. 794 F.2d 221 (6th Cir. 1986)(holding that District Court had jurisdiction under 28 U.S.C. § 1331 to decide employers claim for overpaid pension benefits pursuant to ERISA).

Although *Whitworth* provides a basis for jurisdiction, it sheds no light on this matter.  Neither party addresses whether Defendants would be entitled as a matter of law to restitution.  Even though this Court finds that the CBA terminated on May 31, 2004, it is unclear whether Defendants would be entitled to restitution; the Sixth Circuit held that district courts should consider the inequitable impact of requiring beneficiaries of an ERISA plan to remit overpayments.  *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1251 (6th Cir. 1991).

Plaintiff implicitly argues it would be inequitable to enforce restitution for two reasons.  First, it has already distributed the benefits to the employee beneficiaries.  Second, Defendants stated they were submitting the June and July 2004 contributions pursuant to the settlement agreement.  The Court is unclear how that agreement impacts this analysis.  The settlement agreement does not mention Defendants' obligation to contribute pension benefits.  Thus, in the absence of further exposition by the parties, the Court is unable to evaluate the significance, if any, that Defendants submitted contributions pursuant to the settlement agreement.

Viewing the facts in a light most favorable to Defendants, the Court **DENIES** Plaintiff's request.

### D.     Defendants Discrimination Count Is Not Applicable to Plaintiff

In their response brief, Defendants claim that Plaintiff does not seek summary judgment on Defendant's counterclaim of discrimination.  Count IV of the counterclaim only pleads discrimination against the Union.  Accordingly, Plaintiff was not required to respond to these arguments and need not defend against such a claim.

IV.     **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment as to Defendants Counterclaim. The parts of Defendants' Counterclaim which remain are: breach of contract and restitution.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 27, 2007

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 27, 2007.
>
> S/Linda Vertriest
> Deputy Clerk